I will now call the case of Mr. Pelaez v. U.S. Attorney General. Good morning. May it please the Court. My name is Hengi Perez. I represent the petitioner in this case, Fabian Mesa. At issue before the Court is whether Mr. Mesa was convicted of a misdemeanor or a felony. And thus the question is whether he is admissible to the United States and eligible to adjust his status to that of a permanent resident. We believe that for two reasons that Mr. Mesa's conviction was that for a misdemeanor. First, we believe that the natural application of the categorical approach leads to the conclusion that Mr. Mesa was convicted of a misdemeanor. Second, the ambiguity in this record, whether his conviction was a misdemeanor or a felony offense, is not exactly relevant. Since Mr. Mesa pleaded specifically to subsection 2 of the Connecticut statute and admitted to the factual allegations during his plea hearing, which omitted any reference to age. For, to be admissible to the United States, he would need to show that his conviction was for a misdemeanor, which the maximum sentence was a possible one year, and his maximum time in prison was up to six months. Mr. Mesa pleaded guilty to sexual assault in the fourth degree. Well, I think you would agree that the particular statute that he pleaded guilty to has lots of things going on in it. And my understanding is you would agree that just at the outset looking to that statute, you could properly apply the modified, in fact, I believe you conceded that, the modified categorical approach is the approach we'd look at to look at what in particular is correct. Yes, that is correct. That subdivision has various manners in which a person can be convicted. However, at least from the judgment of conviction, the record- And there's no question that this particular offense is going to come between the moral turpitude sort of clause, correct? Right. So what you're looking for is, and this may be, it's unusual in all of this, it may be by itself, something where there's one thing that's a safety valve. And the safety valve is if the immigrant has one petty offense, only one, with a maximum no more than a year and no more than six months, and it's only one. I mean, if he has two, not going to help. So it's a very odd sort of statute, right? Correct. Yes. So an issue here is whether Mr. Mesa was convicted of misdemeanor, which is what appears from the statute to be the default, or whether he was convicted of a felony, which the statute prescribes his conviction would be a felony, if the victim was under the age of 16. You're not arguing that there's no ambiguity as to what he was convicted of, right? You concede that. Well, the argument would be there's an ambiguity as to, well, the ambiguity exists just because the records of convictions fails to say felony or misdemeanor. However- Because we don't know whether the victim was under or over the age of 16. Right. But I think we can deduce what he was convicted of from his plea. Mr. Mesa did provide a transcript of his plea colloquy, which is in the administrative records starting at page 215, which the prosecutor lays out the factual basis for his conviction. In the factual basis, the prosecutor essentially just reiterates the date of the offense and that Mr. Mesa had sexual contact without consent with the victim, but did not reference the age at all. So if we are to assume that there's some kind of procedural regularity to the plea, if Mr. Mesa was pleading to a felony, the factual basis would have to establish the victim's age. So, I mean, if I'm going to understand what you're saying, and I'm not clear the categorical approach applies because in Moncrief, Justice Sotomayor said there's some qualifications. And, you know, one is that we're not talking about that you can consider shepherd docs when you're determining whether a statutory phrase in a divisible statute. So we're in a divisible statute, and that's what we're talking about. But I gather you're, and you also have the burden of proving this odd sort of thing. It's your safety valve. If I'm understanding you correctly, your argument is, okay, even if I have the burden of proving it, we proved it based on the fact that when you look at this plea, the plea doesn't say anything about a 16-year-old. It just says a person. Also, you have something else, and I'm going to ask your opposing counsel about this. The immigration court didn't consider this, but you also have this docket, whatever. I don't know how to call it, but it describes this as a misdemeanor, correct? Correct. The docket was provided to the immigration judge. The immigration judge did not consider it because it was not certified by the clerk. So that was the only reason it wasn't considered to be, like, a part of the record of conviction. I think the BIA used the phrase it wasn't an appropriate shepherd doc. I don't know. The IJ, I don't remember. Did the IJ get into it wasn't authenticated or something? Right, correct. So the issue here for us is that we believe factually all the evidence points to Mr. Mesa being convicted of a misdemeanor. You think you've met your burden. Yes. So the issue would be, you know, if we're still applying the categorical approach, which limits, you know, the record of review to, you know, certain, you know, plea agreements, the transcript. If we're modified categorical, it's necessarily a mixed law fact. When I say you've proved your case, it's a mixed law fact. But you're saying you've proved it factually. Yes. So, you know, either way, you know, we take a look at this case. When we go down to, you know, we know that he pled guilty to the, you know, fourth degree sexual assault, you know, as non-consensual. We have the judgment from the court. We have his plea agreement. The only thing that is missing from that record is whether, you know, the judge stamped it as misdemeanor or felony. However, all the evidence around the conviction points to misdemeanor. The other reason we believe that Mr. Mesa has shown that his conviction was for misdemeanor is, you know, the modified categorical approach is just a tool for us to get to the categorical approach. You know, we're trying to find out which section of the statute are we, you know, talking about. We've gotten all the way down to, you know, the subsection, but not, I guess, the sentencing. However, under Moncrief, you know, the justices make clear that when we're at the categorical approach, there's a presumption that the conviction rests on the least as criminalized. We believe that this presumption applies in this case since we know which subsection Mr. Mesa was convicted under. One problem, one little snag for me on that is the majority of circuits have concluded that the Moncrief presumption doesn't apply where the alien has the burden of proof to prove eligibility for discretionary relief, where the statute is visible, and where the record does not reveal the specific offense. I know you've got Sacedo from the First Circuit, but there's lots of other cases from lots of others, so that's a less clear issue, I would think. Well, I think this, what differentiates Mr. Mesa's case from the other circuits is that we do, this is not a lack of evidence. It's just, you know, it's not like he failed to provide the transcripts or the judgment. You know, we provided, or he provided all Shepard documents to the Immigration Court and to the BIA. So he met his burden of production. Right. The question is whether he met his burden of persuasion, if there is one, if it's a fact question. Right. So we believe, you know, since all those records were provided, and we know that the specific subsection which he was convicted under, then we can presume that that conviction, that plea rested on, you know, just the fact that, you know, he had non-consensual sexual contact with a victim, not a victim under 16. Thank you. That actually covers, I think I would reserve the rest of my time for, unless there are any other questions. Thank you. Yes. We'll see you again on rebuttal. Good morning. Good morning, Your Honors, and may it please the Court. My name is Ashley Martin, and I represent the respondent in this matter. Your Honors, I'd like to begin by addressing whether the record of conviction in this matter is ambiguous. And throughout these proceedings, the petitioner has conceded that the reviewable record of conviction under Shepard is inconclusive. Well, he hasn't. He sort of said that. But if you look through two footnotes in his brief, he sort of qualifies that, I believe. Well, on page 11 of the petitioner's brief, he states that the reviewable record of conviction leaves us in the position of not knowing. Well, but on one of the first footnotes, he says the record is clear that his conviction is for a misdemeanor as reported by the clerk on its website. And in a second footnote, I didn't write down the numbers, he said if the basis of his conviction is a factual question, he's provided ample evidence outside of those documents. So I agree it's a little confusing, but it seems to me he's preserved an argument that he has made the requisite. We're calling it Shepard, but it's not really Shepard because the INS has a different set of documents they will accept. Well, when you refer to different sets of documents, are you referring to the statute at 1229A.C.3.B. that has the list? Right. Right. And that's something I would like to address. That list at section 1229A.C.3.B., those are documents that may be sufficient to establish the fact of a conviction. And actually, that statute became effective in 1996. That was well before the 2005 Supreme Court decision in Shepard. So that list, that statutory list, those are not Shepard documents. There's a distinction. There's evidence that a conviction exists. And then there's the separate question of what the sentencing or the immigration consequences of that conviction might be. And what the Supreme Court told us in Shepard is that we have a very limited set of documents that we can look at to determine sentencing consequences. And now that has also been extended to immigration consequences. What have courts done with that? So you're saying essentially Shepard overrides this and this, therefore, I mean, would you agree that, leaving aside the reliability of this website thing that has the word misdemeanor on it, that it would have fit either under number two, an abstract of the record of conviction, or a document or record prepared by the direction of the court, would you agree, you may not agree it counts for anything, but would you agree it meets within one of those two things? Possibly. My hesitation with that is that there is a provision in that statute referring to an abstract of a record of conviction. And then the statute goes on to say that it must be prepared by the court in which the conviction was entered. We don't know if this website printout is data that was generated by the court in which this conviction was entered. That's because before the IJ, it wasn't authenticated in a way that would allow you to know that answer. Correct. There's a lot that we don't really know about this document that's the website printout. We don't know who created this document. There's no indication that it was made contemporaneously with or close in time to the guilty plea in this case. We don't know if the information was provided by an employee of the court who had some opportunity to observe the proceeding and record that proceeding in a way that they can attest is fair and accurate. We don't know if the parties have had any opportunity to take a look at the information in this website printout and possibly object to it and make corrections. We just don't know. From looking at it, it looks as if there was a process by which some state employee transposed information from conviction records into an electronic database. And just through the process of transposing data, mistakes can be made. Data can be lost. We don't know if it's a situation where the database forces the state employee to choose misdemeanor or felony and the employee just chose misdemeanor by default and moved on to entering data for the next case. I don't know the answer. I mean, you'd think somebody in Connecticut, forget illegal immigrants, you'd think somebody in Connecticut needs to know one way or the other is this a misdemeanor or felony. Is there how, and you may not know the answer, is how in Connecticut do they, when they have to decide can he carry a gun, how do you know what kind of record keeping they have whether or not this is a misdemeanor or a felony? Your Honor, I don't know the answer to that question. But what I can tell you is that this is not a document that is comparable to a Shepard document for the reasons that I just said. That's what the BIA said. I mean, there's two things going on here. The BIA assumes it has to be a Shepard document, and they said this was not one. Correct. Your authentication reliability argument has some persuasiveness with me, but that's not what the BIA relied on. I gather that was something the IJA relied on. Correct. BIA is strictly that we only look to Shepard and we don't think this is a Shepard document. Correct, Your Honor. And I don't know if the BIA would have had the same conclusion had it been properly authenticated. What's your response to that? If you had answered all these unanswered questions about the document, would the BIA perhaps have said, yeah, we think this is a Shepard document? You know, I think that perhaps if we knew more about where this information came from to create the website printout, if we knew what kind of court official entered this data, if we knew what kind of documents they were looking at to create this record, yeah, I think we would get closer, a lot closer to this being a Shepard document, and maybe it would be. But on this record, the showing simply has not been made that this is a Shepard document. And that sort of folds into the bigger question here, which is the burden of proof, the statutory burden of proof. Can I just direct you? I want to put your argument in a larger context. What we're talking about is the petty offense exception to the crime of moral turpitude issue. Correct. Okay. And so there are three ways you qualify, three requirements in order to qualify for the petty offense exception. Does the government dispute that Mr. Mesa has only one conviction? No. Okay. And does the government dispute that his sentence did not exceed six months? No. Okay. So we're just talking about whether he was eligible, whether the crime he committed allowed for a sentence longer than a year. Correct. And that's why the question of whether or not this sexual assault conviction was a misdemeanor or a felony is relevant, because the maximum sentences are different in Connecticut depending. I understand. So, I mean, is it your view of our analysis in that regard? You start with the categorical approach, right? And then you, is that right? Correct. And then you decide whether the statute is overbroad, whether it's right? Correct. Okay. And then the next step is, is it divisible? Correct. All right. So in your answer to the first one, is it overbroad, is yes. Well, within this peculiar context, yes. Yeah, when we're talking about the petty offense exception. And then the second one, it is divisible? Correct. Okay. Right. And so then you go, you modify the categorical approach just so that you can look at the Shepard documents? At the Shepard documents. Okay. An opposing counsel did make an argument today in court that, well, you know, when you look at the plea colloquy transcript, maybe that's enough to show that this was a misdemeanor. And that's simply not the case. I mean, again, on page 11 of his brief, he conceded that the reviewable record of conviction, that is the Shepard documents, doesn't tell us if this was a misdemeanor. But I think perhaps more importantly than that, when you look at the transcript of the plea colloquy, it was fairly clear that the parties had agreed that they were going to ask for a 179-day sentence. And I think for that reason, it makes sense that there was no discussion at the plea colloquy as to what the maximum sentence was. Because the parties had a – But the plea – I'm assuming that, again, I don't know Connecticut law, but the plea colloquy, as I read through it, simply has the bare bones of assault upon a person. There's nothing about age. And so I'm thinking if you go back later for other purposes, not our purpose, for any other purpose, to see what is this, one would assume that the only way that crime can become a felony is if the person is under the age of 16 and would not one then also assume if in the plea colloquy there is no reference to age at all that there would have been no factual basis for a felony. Well, my response to that is that subsection B of the Connecticut statute that we're discussing is referred to by the state of Connecticut as a sentence enhancer. And so that's not something that would necessarily need to be found before a conviction could be entered, right? It comes into play for sentencing purposes. Well, then do you just look at his sentence? Well, but here the parties apparently agreed to ask for a 179-day sentence. So it appears that for that reason there was no discussion of how subsection B came into play at the plea colloquy. We're still left not knowing whether or not this was a misdemeanor or a felony. We're left to guess. And that's why the petitioner did not satisfy the statutory burden of proof in this matter. And there is a circuit split as to how that statutory burden of proof operates, whereas here you have an income. Yeah, I understand. I'm probably going to understand and maybe think there's something to your argument about Moncrief and the presumption, all the things that give us a headache. Then we go to the categorical. Then we jump somewhere else. But assuming he has the burden of proof, my question to you is, modified categorical, he has a burden of proof. With his plea transcript by itself with no reference to an age where there is no basis in that plea to assume it's anything but a misdemeanor, why has he not met his burden of proof, even under a modified categorical approach? Your Honor, because we're still left to guess. There's no discussion of the sentencing enhancer because the parties apparently agreed to ask for a specific sentence. There's no mention of the words misdemeanor or felony. There's no mention of what the maximum sentence was. There is that uncertainty that's just unsatisfying. But again, and I don't know Connecticut law, and I bet you don't know Connecticut law, but someday, somewhere, it might be important whether he's a misdemeanor or a felon. And I'm not sure on this record that anybody for any purpose would be able to show that he's a felon. But by the same token, Your Honor, the record also leaves us unsatisfied that this was a misdemeanor. And we're in the context here of someone who's conceded removability and undisputably bears the burden of establishing by a preponderance that he's eligible for immigration relief. And because he bears that burden of persuasion and we do have that uncertainty, the result here is that he didn't discharge his burden of proof. Can I talk to you a minute about Moncrief? You say in your brief that Moncrief just doesn't apply. And I really—there may be some disagreement on the panel about that, but I just wanted to explore that with you. It seemed like to me throughout the opinion, the court is talking about both situations where the government has the burden and, you know, where the immigrant has the burden. And so I don't see how you exclude the ruling in Moncrief in this situation because Mr. Mesa has the burden. Can you elaborate on that? Your Honor, it's true that the categorical approach has a role to play regardless of who bears the burden of proof. I mean, in this case, for example, if all sexual assault convictions under this Connecticut statute were felonies and they therefore all had a maximum sentence over a year, then we would be done under the categorical approach because this categorically would not qualify under the petty offense exception. And so Moncrief was right that regardless of who bears the burden of proof, our first resort should be to the categorical approach. And it's not so much that the burden of proof doesn't exist under the categorical approach. It does. It's just that the result is the same under the categorical approach regardless of who bears the burden of proof because it's purely a legal inquiry, right? But similarly, with the modified categorical approach, we're instructed to apply a legal presumption by the Supreme Court in Moncrief. Isn't that right? Well, that's where the government would disagree on that point because the modified categorical approach, there's a factual element to that. And actually, that interpretation of Moncrief would be inconsistent with the regulation at 8 CFR section 1240.8 part D. And that regulation specifically says where the evidence indicates that a mandatory grounds of denial may apply, the applicant for immigration relief then bears the burden of proof by a preponderance of the evidence of showing that that mandatory grounds of denial does not apply. So your argument is it's a fact question or it's at least a mixed question of law and fact? Yes, Your Honor. And for that reason— Legal presumption would be a legal question, right, once you determine the factual predicate? I believe so. You know, I read some statistic recently about how, you know, the number of people who represent themselves in these proceedings before the government. I mean, it looks like to me Mr. Mesa did a pretty good job of coming up with, you know, the evidence that he could about whether his conviction was a misdemeanor or a felony. I mean, what else could he have done? Your Honor, yes, Your Honor. And the petitioner was represented by counsel. I know, but I mean, the rule we announced in this case is going to apply to people who are not represented. Correct. Your Honor, and two responses to that. The Tenth Circuit in the Lucio Rios case noted that point as well. And what the court said about that is this is not an inquiry regarding whether or not it's anybody's fault that we don't have a conclusive conviction record. This is not about fault. This is about do the documents tell us what this conviction was and who bears the burden of proof. Yeah, I mean, I don't dispute any— But, I mean, in this case, Mr. Mesa came up with some evidence, and I'm just asking you, you know, what else could he have come up with? I mean, you say maybe he could have authenticated the website page, but it looks like to me he did a pretty good job. But you disagree. Well, I guess—I'm sorry. Go ahead. Answer that because I want to elaborate on Judge Martin's question. Well, we disagree that it's a cognizable conviction record under Shepard. The government is not intimating that anybody withheld conviction documents here. And I think that the categorical and modified categorical approaches, as noted by several courts, including recently the Fifth Circuit, sometimes that leaves us with results that are not satisfying. Well, can I just—I just want to follow up. So the Tenth Circuit case that you just mentioned is, I understand, being conferenced by the Supreme Court. A cert petition has been filed. Well, yeah, and it's set to be conferenced, I think, in early January. I think that's correct. So, I mean, what should we do with that? Your Honor, it seems that, you know, if the Supreme Court grants cert in that matter, I think certainly it would make sense for the court to hold this case in abeyance pending the Supreme Court's decision. As a writ has not yet been granted and we do have the weight of Circuit authority on this issue saying that the party with the burden of proof bears the detriment of an inconclusive record, then I think it would make sense for this court to go ahead and decide the issue before it. So that was a two-judge opinion from the Tenth Circuit because Justice Gorsuch had been on the panel and he had left at that point. Yes, he was excused then. Right, I think that's right. You're correct about that, but I think, too, it's important to note that Lucio Rios was not the first published decision where the Tenth Circuit weighed in on this matter. The Tenth Circuit did have a previous three-judge panel decision concluding that the party bearing the burden of proof bears the burden. It doesn't, I mean, we've got, and the Ninth Circuit is currently considering this case. And you've got several other circuits on your side, too, but the Supreme Court will be more important than any of that. Yeah, not including the Ninth Circuit, there are five circuits that have agreed with the government on this issue. That's correct, Your Honor. And my question, and I've forgotten what Judge Martin said that reminded me of this, but I remember my question would be just to hone in again on the Shepard business. If, oh, Judge Martin was saying what a good job the petitioner had done on his own. If the petitioner had come in and had evidence with the clerk to say, you know, this is how we do our records, this would, because it's a little screwy that it came out after his conviction a year later. You don't know where that came from a year later. It's not contemporaneous. This is how we do it. We have to know whether something's a misdemeanor or a felony. We take the records that we get from the judge, and whether we're right or wrong or whether we transposed or made a mistake for the purposes of Connecticut, this is it. If he had had evidence like that, would, even though Shepard's slightly different than your statute, would you agree that would have been an adequate sort of document for purposes of improving his point? Well, I think that if the petitioner had had a witness come in to talk about this website conviction record that he submitted, to say, look, yes, this is how we created it, and here's where we get the knowledge as to whether it was a misdemeanor or a felony, then he could make the showing that this is comparable to a Shepard document and therefore should be considered under Shepard, because Shepard did recognize that there are some documents out there that may not have been listed in the court's decision that may be comparable to those listed. I mean, this is such a weird statute. I mean, I guess it's one that you might have to deal with from time to time. You've got this safety valve where you can only have one of it. If you have two of it, then we're back off into another approach. And then you've got this statute where there's this demarcation between whether it's a felony or misdemeanor, but apparently under Connecticut law, you don't really always have to make that clear. So it's a confluence of odd things in one case. I agree with that, Your Honor. But I think that at the end of the day, you have a petitioner here who has conceded removability, and we have limited forms of immigration relief, and those forms are limited to those who can persuasively show that they meet the eligibility requirements. And under Shepard, the petitioner just didn't do that here. And I think it is noteworthy, too, that the petitioner had an opportunity to file for a discretionary waiver of the applicable ground of inadmissibility, and he withdrew that application. And, you know, when you consider that. I mean, just because what would he have had to show to win on that application? How could he have won that? Under Section 1182H. Your Honor, I apologize. I don't remember the exact wording of that statute, but it is showing that the equities favor. Oh, I see. That, yeah, it's a question of. That was a mistake for him to do that, probably. Your Honor, I don't know the reasons why he withdrew that application, but he could have been considered for adjustment as a matter of discretion with the waiver application, and he decided not to have that opportunity. Let me just ask you one more thing. This case is an example, and you've said several times in your argument, we don't know what Connecticut law is. We don't know what type of documents Connecticut retains, in what form. The government doesn't know that. The court certainly doesn't know that. The petitioner doesn't know that. Isn't that the very reason why the Supreme Court said it created the categorical and the modified categorical approach? In order to avoid disparities. Avoid the issue of great disparities, and because neither party really knows what state law is or what the documents reflect, et cetera. Yeah. Your Honor, I think that the intent was that the categorical and the modified categorical approach would simplify things and eliminate many trials as to what the underlying facts of a conviction were. And as it's played out over the years, a lot of courts have opined that this approach has a lot of holes in it, and it's leaving us with some unsatisfying results. But at present, under Supreme Court law, it's the approach that we're stuck with. If you're correct that Moncrief doesn't apply. Correct. And Moncrief does not apply. I think it was noted earlier that, yes, there's language in Moncrief about a presumption, and that's immediately qualified. The Supreme Court used the word. We're making a qualification here. We understand your argument on that. Thank you. All right. Thank you, Your Honors. I would just like to focus on, you know, we have two, I guess, separate reasons why we think the court should send the case back to the BIA. If this is a factual matter, you know, if we're in the realm of facts, the petitioner in this matter, Fabian Mesa, did provide ample other documents to show that the conviction was for a misdemeanor. Specifically, although he did not get, I guess, the clerk to testify or a letter from the clerk, Mr. Mesa did provide a letter from his criminal attorney that represented him at the criminal proceedings in Connecticut. Did he provide a letter from the prosecutor? No, from the defense attorney who defended him in his plea negotiations. If this were remanded to decide on what this website meant, do you envision the possibility of bringing in witnesses to explain what the page meant, how it was created? Do you think you would be able to satisfy our concern on that? It is possible. I know that the attorneys that represented Mr. Mesa at the hearing made several attempts to get the clerk to certify the docket, but were unsuccessful. I'm not sure why the clerk in Connecticut refused to do so. I guess, in theory, we could subpoena the clerk to testify to see, you know, if it's an accurate record. The process. Right. So that is a possibility if the case were remanded back to the BIA or back to the immigration judge. The second point I want to just go over is that the government mentioned that the 16-year-old felony conviction is a sentencing enhancer. Although, if that was the case, that would mean that, you know, if the fact that the victim was under a certain age was not a factor at a trial, that means that the statute wouldn't be divisible since it would mean a separate means of convicting the crime. However, I think the BIA correctly pointed out that any fact that increases a sentence would have to be proven at trial beyond a reasonable doubt. Therefore, it makes it a separate element. It makes sense, then, that if for there to be a factual basis for Mr. Mace's plea, all the facts that lead to, you know, him having a conviction has to be laid out and he admits those facts. The fact that, you know, if the victim was under 16, for it to be a felony, he would have had to plead to that fact at the plea colloquy. I don't see any way around that for it to be a valid conviction under appending. I think for those reasons, you know, the case should be remanded back to the BIA. Thank you. Thank you, Mr. Perez. We appreciate the presentation. Thank you. That concludes our session in court today. We'll reconvene tomorrow morning at 9 o'clock.